THOMAS F. CASEY III, COUNTY COUNSEL (SBN 47562)
By: Miruni Soosaipillai, Deputy (SBN 160858)
By: Deborah Penny Bennett, Deputy (SBN 072282)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063
Telephone: (650) 363-1960
Facsimile: (650) 363-4034
E-mail: msoosaipillai@co.sanmateo.ca.us

Attorneys for Defendants
COUNTY OF SAN MATEO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTARA WATER AND SANITARY DISTRICT, | Case No. C 07-3176 JF |
| Plaintiffs, | **DEFENDANT COUNTY OF SAN MATEO'S MOTION FOR JOINDER OF NECESSARY PARTY (UNITED STATES OF AMERICA) AS DEFENDANT** |
| vs. | |
| COUNTY OF SAN MATEO, et al., | Hearing: |
| Defendants. | Date:    July 27, 2007<br>Time:    9:00 a.m.<br>Dept:    Courtroom 3, 5th Floor<br><br>(Hon. Jeremy Fogel) |

**NOTICE IS HEREBY GIVEN THAT** defendant COUNTY OF SAN MATEO hereby moves the court for an order compelling plaintiff to join the UNITED STATES OF AMERICA as a party to this action on the grounds that the UNITED STATES is a necessary party as set forth in Rule 19 of the Federal Rules of Civil Procedure.

This motion is based upon Rules 19 and 21 of the Federal Rules of Civil Procedure, the Complaint, Notice of Motion and Motion, Memorandum of Points and Authorities in Support of the Motion, and Exhibits thereto, matters of which this Court can take judicial notice, all pleadings and papers on file in this action, and upon such other matters as may be presented to the court at the time of the hearing.

///

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The United States has several significant interests in the Half Moon Bay Airport property being claimed by plaintiff.  First, while defendant County of San Mateo does own the property on which it operates the Half Moon Bay Airport, the deed transferring the property from the United States to the defendant says that property will revert to the United States if the defendant transfers the property without the consent of the FAA.   In addition, the County's use of the airport is regulated by the FAA, whose approval is required for all uses of the airport property.  In light of the County of San Mateo's lack of authority to transfer the property without the consent of the FAA, and in light of the FAA's refusal to permit the transfer of ownership to plaintiff, complete relief cannot be accorded until and unless the United States of America is a party to this condemnation proceeding.

### *Historical Background*

In 1947, the United States of America quitclaimed the property on which the Half Moon Bay Airport is located to defendant County of San Mateo.  To determine whether the United States should be joined as a defendant, it is necessary to refer to the deed conveying the airport property to defendant.

### 1.    The 1947 Quitclaim Deed

The deed, which was accepted by the Board of Supervisors in May 1948 and recorded thereafter, is attached hereto as Exhibit 1, and pursuant to Rule 201 of the Fed.R.Ev., defendant requests that this Court take judicial notice of the quitclaim deed and the County's acceptance.[1]

The quitclaim deed provides that the property may be successively transferred only with the permission of the Civil Aeronautics Authority, or its successor agency, which is the Federal Aviation Authority, and that in the event of a breach of that term or any other term of the agreement, the property reverts back to the United States of America.  The deed also provides that the property is to be used only for airport purposes, although the County is authorized to permit the property may be used for such other

---

[1]  In determining whether to join a party who has not initially been sued by plaintiff, the court may go beyond the pleadings and examine affidavits and other documents.  Doy Yee Enterprises (S) PTE, Ltd. v. Advantek, Inc., 149 F.R.D. 185, 187 (D.Minn.1993).

temporary purposes until "in the opinion of the Civil Aeronautics Authority or its successor Government agency, it is needed for airport purposes…provided that such use does not interfere with the operation of the remainder of the airport as a public airport."

**2.      The FAA's refusal to permit the transfer of any airport property to plaintiff.**

On April 19, 2007, the FAA advised the County that it would not permit the transfer of any of the airport property to plaintiff.  A copy of the FAA letter, which is authenticated by the affidavit of counsel, is attached hereto as Exhibit 2.  The FAA letter was presented to the plaintiff prior to its April 19, 2007 adoption of the Resolution of Necessity that led to the pending condemnation action.  Despite the letter and despite the plaintiff's knowledge that FAA approval is necessary for the action it proposes to take, plaintiff did not name the United States as a party to this lawsuit.

**3.      Plaintiff's use of a portion of the airport property.**

For at least forty years, the residents of MONTARA and MOSS BEACH, located in the unincorporated area of San Mateo County, have obtained water from wells located on the COUNTY OF SAN MATEO'S property at the half Moon Bay Airport.  Plaintiff, MONTARA WATER AND SANITARY DISTRICT, currently enjoys a revocable encroachment permit which authorizes the extraction of water from the airport wells.

Despite this stable source of water, on April 19, 2007, plaintiff's governing board adopted a resolution of necessity authorizing condemnation proceedings against defendant the County of San Mateo so that plaintiff could to take outright ownership of the well sites on the County's airport property.


**II.      ARGUMENT**

The joinder of necessary parties is governed by Rules 19 and 21 of the Federal Rules of Civil Procedure.  "The inquiry under Rule 19 is a practical one and fact specific ... [and] must be made in light of the particular circumstances of each case." *Blumberg v. Gates,* 204 F.R.D. 453, 454 (C.D.Cal.2001).

Rule 19:

**"**Joinder of Persons Needed for Just Adjudication"

(a) Persons to be Joined if Feasible.  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action **shall** be

joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest ...."  (emphasis added).

Rule 21 provides that "(p)arties **may** be… added by order of the court on motion of any party…." (emphasis added).

Based on these standards, the plaintiff should be required to join the United States of America as a defendant to this lawsuit.  The United States is a necessary party to the litigation.   While there is no precise formula for determining whether a particular non-party is necessary to an action, the determination is "heavily influenced by the facts and circumstances of each case."  See *Bakia v. County of Los Angeles,* 687 F.2d 299, 301 (9th Cir.1982).

Rule 19(a) contemplates a two-part analysis to aid in determining if an absent party is necessary. First, the court must consider if complete relief is possible among those parties already in the action. Second, the court must consider whether the absent party has a legally protected interest in the outcome of the action. *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir.1991).  "If a non-party satisfies **either** of the two prongs, the non-party is necessary." *Yellowstone County v. Pease,* 96 F.3d 1169, 1172 (9th Cir.1996) *cert. denied,* 520 U.S. 1209 (1997*).* (emphasis added.)

This case satisfied **both** of the two prongs that indicate joinder.  Complete relief is impossible without the United States, as the County's ownership involves a reversion to the United States under the circumstances presented by this lawsuit.  The County is not permitted to transfer or to permit uses of the airport land without the approval of the FAA.  In addition, a party is necessary if a court determines that the non-party has a legally protected interest in the suit, and in this case, there is no doubt that United States has such an interest.

Even a cursory examination of the Complaint and the deed suggest that the Plaintiff cannot obtain complete relief in the absence of the United States as a party.  Absent the joinder of the United States, the

County would be at risk of "inconsistent obligations by reason of the claimed interest." (Rule 19(b).) If the plaintiff ultimately prevails, defendant lacks the authority to convey title of the well sites to anyone other than the United States. Therefore, defendant would be required to transfer the entire airport property back to the United States of America pursuant to the reversion in the deed. Furthermore, even if condemnation is upheld, defendant can not transfer the property without permission of the United States. Thus, the Plaintiff can not obtain complete relief in the absence of the United States, and the United States is a "necessary" party for purposes of Rule 19(a). Plaintiff's allegation that the taking would be "subject to the interest of the federal government" (Complaint, ¶ 3, lines 9 through 11) does not make sense, because the interest of the federal government precludes the transfer in the first instance.

Finally, the United States cannot be bound by a decision in an action in which the United States is not a party. *Carlson v. Tulalip Tribes of Washington,* 510 F.2d 1337 (9th Cir. 1975). Therefore, if plaintiff prevails in this lawsuit and the United States is not a party, the judgment would not compel the United States to relinquish or not to exercise its right of reversion.

### III.   CONCLUSION

The relief that plaintiff requests would require the United States' deed to the county to be set aside. No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable. *Virginia Sur. Co. v. Northrop Grumman Corp.,* 144 F.3d 1243 (9th Cir. 1998)*; Lomayaktewa v. Hathaway,* 520 F.2d 1324 (9th Cir. 1975) *cert denied*, 42 U.S. 903 (1976). Accordingly, plaintiff should be ordered to join the United States as a party defendant to the pending lawsuit.

Dated:  June 22, 2007.                         THOMAS F. CASEY III, COUNTY COUNSEL


                                               By: _____/s/_____
                                                    Miruni Soosaipillai, Deputy

                                               Attorneys for Defendants
                                               COUNTY OF SAN MATEO

THOMAS F. CASEY III, COUNTY COUNSEL (SBN 47562)
By: Miruni Soosaipillai, Deputy (SBN 160858)
By: Deborah Penny Bennett, Deputy (SBN 072282)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA  94063
Telephone:  (650) 363-1960
Facsimile:  (650) 363-4034
E-mail:  msoosaipillai@co.sanmateo.ca.us

Attorneys for Defendants
COUNTY OF SAN MATEO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTARA WATER AND SANITARY DISTRICT,<br><br>        Plaintiffs,<br><br>        vs.<br><br>COUNTY OF SAN MATEO, et al.,<br><br>        Defendants. | Case No. C 07-3176 JF<br><br>**[PROPOSED] ORDER FOR JOINDER OF NECESSARY PARTY (UNITED STATES OF AMERICA) AS DEFENDANT**<br><br>Hearing:<br><br>Date:    July 27, 2007<br>Time:   9:00 a.m.<br>Dept:   Courtroom 3, 5th Floor<br><br>(Hon. Jeremy Fogel) |

Defendant County of San Mateo's Motion for Joinder of Necessary Party (United States of America) as Defendant came on regularly for hearing on July 27, 2007 before the Honorable Jeremy Fogel in Courtroom 3 of this court.  All parties appeared through their counsel of record.  The papers and records of this action have been considered and the arguments of counsel heard.

Good cause appearing therefor, plaintiff shall join the UNITED STATES OF AMERICA as a defendant to this action on the grounds that the UNITED STATES is a necessary party as set forth in Rule 19 of the Federal Rules of Civil Procedure due to its interest in the property which is the subject of this action.

//

1          IT IS SO ORDERED.

2

3     Dated: _____

4

5                                        _____
                                         HONORABLE JEREMY FOGEL
6                                        UNITED STATES DISTRICT COURT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>EXHIBIT 1</u>

# Quitclaim Deed

**Defendant County of San Mateo's Motion for Joinder of Necessary Party
(United States of America) as Defendant**

IN THE BOARD OF SUPERVISORS,
COUNTY OF SAN MATEO, STATE OF CALIFORNIA.

RESOLUTION NO. 3454

BE IT RESOLVED that the attached QUITCLAIM DEED dated September 2
from UNITED STATES OF AMERICA Acting by and Through War Assets Administ
to the COUNTY OF SAN MATEO, be and it is hereby accepted, and that
the Recorder of the County of San Mateo, be and he is hereby
requested and authorized to place said QUITCLAIM DEED of record.

Regularly passed and adopted by order of the Board of Super-
visors this 24th day of May ,19 48 .

Chairman, Board of Supervisors,
County of San Mateo, State of
California.

ATTEST: _____ Clerk.

BOARD OF SUPERVIS

FILED

MAY 24 1948

W. H. AUGUSTUS, Cl

_____ 44 PAGE 4

STATE OF CALIFORNIA,)
                     ) ss.
County of San Mateo. )

I, W. H. AUGUSTUS, County Clerk and ex-officio Clerk of the
Board of Supervisors of the County of San Mateo, State of California,
do hereby certify that the foregoing is the true and correct copy
of the original resolution as adopted by the Board of Supervisors
_____, accepting deed from _____

_____

WITNESS my hand and seal this _____ day of _____ 19____ .

County Clerk and ex-officio Clerk
of the Board of Supervisors.

(31)

VOL 1521 PAGE 2

Half Moon Bay Flight Strip
W-Calif-194

## QUITCLAIM DEED

THIS INDENTURE, made this 26 day of Sept, 1947,

between the UNITED STATES OF AMERICA, acting by and through the War Assets

Administration, under and pursuant to Executive Order 9689, dated January 31,

1946, and the powers and authority contained in the provisions of the Surplus

Property Act of 1944, as amended, and applicable rules, regulations and

orders, party of the first part, and COUNTY OF SAN MATEO, a body politic under

the laws of the State of California, acting by and through its Board of

County Supervisors, party of the second part;

WITNESSETH: That the said party of the first part, for and in

consideration of the assumption by the party of the second part of all the

obligations and its taking subject to certain reservations, restrictions and

conditions, and its covenant to abide by and agree to certain other

reservations, restrictions, and conditions, all as set out hereinafter, has

remised, released, and forever quitclaimed and by these presents does remise,

release and forever quitclaim to the said party of the second part, its

successors and assigns, under and subject to the reservations, restrictions

and conditions, exceptions, and reservation of property and rights herein-

after set out, all its right, title, and interest in the following described

property situated in the County of San Mateo, State of California, to wit:

BEGINNING at a point in the southeasterly line of
Marine View Terrace Tract, which bears N. 29° 19' E.,
1110.54 ft. and N. 43° 00' W., 1579.39 ft. from the most
easterly corner of Lot 1 in Block 26 of the Riviera Ocean
Villa Tract, as per map thereof filed for record in Book
6 of Maps at page 20, Records of San Mateo County, thence
N. 28° 42' 45" E. 1700 ft. more or less to the southwesterly
line of the County Road (now a State Highway) from Half Moon
Bay to Marine View; thence in a general southeasterly
direction, following the meander of the southwesterly line
of said road, 4287 feet, more or less, to a one inch iron
pipe, which is at the most northerly corner of a Portion
of Francisco Heights, as designated on the map entitled
"Map of Francisco Heights Near Half Moon Bay, San Mateo
County, California", which map was filed in the office of
the Recorder of the County of San Mateo, State of California,
on March 3, 1908 in Book 6 of Maps at pages 5 and 6, thence
continuing along the southwesterly line of the Highway,
1125 feet, more or less, to a point on the southeasterly
line of Francisco Heights Subdivision, thence N. 25° 57' E.
30 ft., to the intersection of the center line of the

QUITCLAIM DEED

County Road (now a State Highway) from which intersection a witness post marked AXVI bears North 26° East, 0.34 chains; thence southeasterly along the center line of said Highway to a point, from which bears North 71° 00' West, 1000 feet, more or less, which is the most northerly corner of the lands of Danieri, thence South 71° East, 65 feet more or less to a point in the center of the Denniston Creek; from which a witness post marked AV bears North 71° W., distant 19.80 ft., thence up said creek in the center of the same and following the meanderings thereof as follows:   South 18° East, 104.28 feet; thence South 14° 45' East, 132 feet; thence South 18° West, 89.10 feet; thence South 8° 30' West, 165.0 feet; thence South 31° 30' West 72.60 feet; thence South 66 feet; thence South 13° East, 83.44 feet; thence South 23° East, 75.90 feet; thence leaving center line of said creek South 85° 30' East, 2640 feet, from which a witness post marked AXIII bears North 27° 30' East, distant 24.42 feet; thence South 50° East, 51.48 feet, from which a witness post marked AXII bears North 27° 30' East, distant 24.42 feet; thence South 11° 30' East, 419.76 feet; thence North 27° 30' East, 24.92 feet to a fence corner post marked AXI; thence South 25° 30' East 87.02 feet, to a post marked AX, standing in line of fence on the westerly side of the tract of land belonging to Patrick McMahon; thence North 71° West 1598.23 feet, from which a post marked AVII bears North 71° West 100.61—— feet, thence North 47° East, 64.93 feet; thence North 43° 00' West, 5889.74' to a point from which the most easterly corner of Lot 1 in Block 26 of the Riviera Ocean Villa Tract, as per map thereof filed for record in Book 6 of Maps, at page 20, Records of San Mateo County; thence North 43° 00' West, 1193.27 feet; thence South 47° 00' West, 625.0 feet; thence North 43° 00' West, 186.85 feet to the point of beginning.

Containing 217.68 acres of land.

TOGETHER WITH improvements described as follows:

Buildings:  T-1, T-2, T-3, T-4, T-5, T-6, T-14, T-15, T-16, T-17, T-18, T-19, T-7, T-9, T-101, and T-102.

Improvements:  Taxiways, field drainage, and field markings.
Fueling system - 3 underground tanks
Existing surplus utility systems

RESERVING HOWEVER, a perpetual easement for a water pipeline, more particularly described as follows:

BEGINNING at a point on the northwesterly boundary of that land conveyed by Riviera Land Company to the United States of America by Deed dated 14 April 1943, recorded 15 April 1943 in Volume 1056, Page 307 in the Official Records of San Mateo County, State of California, said point bearing S 28° 42' 45" W along said northwesterly boundary line a distance of 469.35 feet from the most northerly point of said land, said point being also the most southerly point on the center line of a revocable permit granted by the

Board of Supervisors, County of San Mateo, State of California to the United States of America, said revocable permit being in the files of the County Clerk of San Mateo, State of California, and running thence N 28° 42' 45" E along the aforementioned northwesterly boundary line, 5.46 feet; thence S 37° 35' 45" E, 186.34 feet; thence S 38° 25' 30" E, 119.26 feet; thence S 57° 45' 10" E, 138.86 feet; thence S 59° 24' 05" E, 130.11 feet; thence S 55° 51' 20" E, 134.42 feet; thence S 45° 37' 40" E, 107.80 feet; thence S 37° 56' 40" E, 103.86 feet; thence S 35° 14' 55" E, 641.23 feet; thence S 35° 29' 45" E, 102.49 feet; thence S 56° 57' 30" E., 124.00 feet; thence S 49° 13' 10" E, 583.95 feet; thence S 48° 31' 25" E, 188.44 feet; thence S 61° 27' 35" E, 724.94 feet; thence S 58° 11' 25" E, 526.02 feet; thence S 57° 03' 25" E, 162.07 feet; thence S 45° 23' 45" E, 136.85 feet; thence S 47° 56' 25" E, 129.04 feet; thence S 52° 24' 05" E, 95.09 feet; thence S 55° 09' 25" E, 642.87 feet; thence N 30° 12' 35" E, 127.56 feet; thence N 56° 05' 25" W, 60.81 feet; thence N 33° 54' 35" E, 12.00 feet to a point on the boundary line of that property conveyed by Pietro, Petrocchi et al., to the United States of America by Deed dated 12 March 1943, recorded 18 March 1943 in Volume 1050, Page 474 in the Official Records of San Mateo County, State of California; thence S 56° 05' 25" E, 70.06 feet; thence S 30° 12' 35" W, 139.76 feet; thence S 55° 09' 25" E, 697.02 feet; thence N 34° 50' 35" E, 5.00 feet; thence S 55° 09' 25" E, 21.00 feet; thence S 34° 50' 35" W, 26.00 feet; thence N 55° 09' 25" W, 21.00 feet; thence N 34° 50' 35" E 4.98 feet; thence N 56° 40' 25" W, 704.59 feet; thence N 30° 12' 35" E, 24.75 feet; thence N 55° 09' 25" W, 643.93 feet; thence N 52° 24' 05" W, 95.71 feet; thence N 47° 56' 25" W, 129.64 feet; thence N 45° 23' 45" W, 136.35 feet; thence N 57° 03' 25" W, 160.95 feet; thence N 58° 11' 25" W, 525.64 feet; thence N 61° 27' 35" W, 725.80 feet; thence N 48° 31' 25" W, 189.52 feet; thence N 49° 13' 10" W, 583.21 feet; thence N 56° 57' 30" W, 125.12 feet; thence N 36° 29' 45" W, 104.39 feet; thence N 35° 14' 55" W, 641.03 feet; thence N 37° 56' 40" W, 102.94 feet; thence N 45° 37' 40" W, 106.22 feet; thence N 55° 51' 20" W, 133.22 feet; thence N 59° 24' 05" W, 129.95 feet; thence N 57° 45' 10" W, 140.70 feet; thence N 38° 25' 30" W, 121.04 feet; thence N 37° 35' 45" W, 182.04 feet to a point on the boundary line of the aforementioned land conveyed by Riviera Land Company to the United States of America; thence N 28° 42' 45" E along the said boundary line, 5.46 feet to the point of beginning, containing 1.62 acres, more or less.

BEING the property acquired by the United States of America by condemnation proceedings titled United States of America vs. 33.22 acres of land, San Mateo County, and Giovanni Fatroni, et al., Southern Division of the United States District Court for the Northern District of California.

The above described premises are transferred subject to existing easements for roads, highways, public utilities, railways and pipelines, and all other easements and encumbrances of record.

-3-

EXCEPTING, HOWEVER, from this conveyance all right, title and interest in and to all property in the nature of equipment, furnishings and other personal property which can be removed from the land without material injury to the land or structures located thereon other than prope: of such nature located on the premises conveyed hereby which is required for the efficient operation for airport purposes of the structures and improvements specifically listed hereinabove as being transferred hereby; and further excepting from this conveyance all structures on the above describe premises other than structures specifically described or enumerated above as being conveyed hereunder, and reserving to the party of the first part the right of removal from the premises of the property and structures excep ed hereby, within a reasonable period of time after the date hereof, which shall not be construed to mean any period less than one (1) year after the date of this instrument.

Said property transferred hereby was duly declared surplus and was assigned to the War Assets Administration for disposal, acting pursuant to the provisions of the above mentioned Act, as amended, Executive Order 9689, and applicable rules, regulations and orders.

By the acceptance of this deed or any rights hereunder, the said party of the second part, for itself, its successors and assigns, agrees that transfer of the property transferred by this instrument is accepted subject to the following restrictions set forth in subparagraphs (1) and (2) of this paragraph, which shall run with the land, imposed pursuant to the authority of Article 4, Section 3, Clause 2 of the Constitution of the United States of America, the Surplus Property Act of 1944, as amended, Executive Order 9689, and applicable rules, regulations and orders:

(1) That all of the property transferred hereby, together with the adjacent flight strip under the jurisdiction of the Public Roads Administratic hereafter in this instrument called the "airport", shall be used for public airport purposes, and only for such purposes, on reasonable terms and without unjust discrimination and without grant or exercise of any exclusive right for use of the airport within the meaning of Section 303 of the Civil Aeronautics

-4-

VOL 1521 PAGE 6

Act of 1938. As used herein, "public airport purposes" shall be deemed to exclude use of the structures conveyed hereby, or any portion thereof, for manufacturing or industrial purposes. However, until in the opinion of Civil Aeronautics Administration or its successor Government agency, it is needed for public airport purposes, any particular structure transferred hereby may be utilized for non-manufacturing or non-industrial purposes in such manner as the party of the second part deems advisable, provided that such use does not interfere with operation of the remainder of the airport as a public airport.

(2)  That the entire landing area, as defined in WAA Regulation 16, dated June 26, 1946, and all structures, improvements, facilities and equipment of the airport shall be maintained at all times in good and service-able condition to assure its efficient operation, provided, however, that such maintenance shall be required as to structures, improvements, facilities and equipment only during the remainder of their estimated life, as determined by the Civil Aeronautics Administration or its successor Government agency, with the exception, however, that the Grantee shall maintain only that part of the existing hardstand shaded in green on the attached photostat copy of the plat of Half Moon Bay Army Airbase Flight Strip, prepared by the United States Engineering Office, San Francisco, California, and dated February 1, 1944. In the event materials are required to rehabilitate or repair certain of the aforementioned structures, improvements, facilities or equipment, they may be procured by demolition of other structures, improvements, facilities or equip-ment transferred hereby and located on the above described premises, which have outlived their use as airport property in the opinion of the Civil Aeronautics Administration or its successor Government agency.

By the acceptance of this deed or any rights hereunder, the said party of the second part for itself, its successors and assigns, also assumes the obligations of, covenants to abide by and agrees to, and this transfer is made subject to, the following reservations and restrictions set forth in subparagraphs (1) to (6) of this paragraph, which shall run with the land, imposed pursuant to the authority of Article 4, Section 3, Clause 2 of the

-5-

Constitution of the United States of America, the Surplus Property Act of 1944, as amended, Executive Order 9689 and applicable rules, regulations and orders:

(1)  That insofar as is within its power and reasonably possible, the party of the second part, and all subsequent transferees shall prevent any use of land either within or outside the boundaries of the airport, including the construction, erection, alteration, or growth of any structure or other object thereon, which use would be a hazard to the landing, taking-off, or maneuvering of aircraft at the airport, or otherwise limit its usefulness as an airport.

(2)  That the building areas and non-aviation facilities, as such terms are defined in WAA Regulation 16, dated June 26, 1946, of or on the airport shall be used, altered, modified, or improved only in a manner which does not interfere with the efficient operation of the landing area and of the airport facilities, as defined in WAA Regulation 16, dated June 26, 1946.

(3)  That itinerant aircraft owned by the United States of America (hereinafter sometimes referred to as the "Government") or operated by any of its employees or agents on Government business shall at all times have the right to use the airport in common with others; provided, however, that such use may be limited as may be determined at any time by the Civil Aeronautics Administration or the successor Government agency to be necessary to prevent interference with use by other authorized aircraft, so long as such limitation does not restrict Government use to less than twenty-five (25) per centum of capacity of the landing area of the airport.  Government use of the airport by virtue of the provisions of this subparagraph shall be without charge of any nature other than payment for damage caused by such itinerant aircraft.

(4)  That during the existence of any emergency declared by the President of the United States of America or the Congress thereof, the Government shall have the right without charge, except as indicated below, to the full, unrestricted possession, control and use of the landing area, building areas, and airport facilities, as such terms are defined in WAA

VOL 1521 PAGE 8

Regulation 16, dated June 26, 1946, or any part thereof, including any additions or improvements thereto made subsequent to the declaration of any part of the airport as surplus; provided, however, that the Government shall be responsible during the period of such use for the entire cost of maintaining all such areas, facilities and improvements, or the portions used, and shall pay a fair rental for the use of any installations or structures which have been added thereto without Federal aid.

(5)  That no exclusive right for the use of any landing area or air navigation facilities, as such terms are defined in WAA Regulation 16, dated June 26, 1946, included in or on the airport shall be granted or exercised.

(6)  That the property transferred hereby may be successively transferred only with the approval of the Civil Aeronautics Administration or the successor Government agency and with the proviso that any such subsequent transferee assumes all the obligations imposed upon the party of the second part by the provisions of this instrument.

By acceptance of this instrument or any rights hereunder, the party of the second part further agrees with the party of the first part as follows:

(1)  That upon a breach of any of the aforesaid reservations or restrictions by the party of the second part or any subsequent transferee, whether caused by the legal inability of said party of the second part or subsequent transferee to perform any of the obligations herein set out, or otherwise, the title, right of possession and all other rights transferred to the party of the second part, or any portion thereof, shall at the option of the party of the first part revert to the party of the first part upon demand made in writing by the War Assets Administration or its successor Government agency at least sixty (60) days prior to the date fixed for the revesting of such title, right of possession, and other rights transferred, or any portion thereof; provided, that, as to installations or structures which have been added to the premises without Federal aid, the Government shall have the option to acquire title to or use of the same at the then fair market value of the rights therein to be acquired by the Government.

-7-

VOL 1521 PAGE 9

(2)  That if the construction as covenants of any of the fore-going reservations and restrictions recited herein as covenants or the application of the same as covenants in any particular instance is held invalid, the particular reservations or restrictions in question shall be construed instead merely as conditions upon the breach of which the Government may exercise its option to cause the title, right of possession and all other rights transferred to the party of the second part, or any portion thereof, to revert to it, and the application of such reservations or restrictions as covenants in any other instance and the construction of the remainder of such reservations and restrictions as covenants shall not be affected thereby.

TO HAVE AND TO HOLD the said premises, with appurtenances, except the property and rights excepted and reserved above, and under and subject to the aforesaid reservations, restrictions, and conditions, unto the said party of the second part, its successors and assigns forever.

IN WITNESS WHEREOF, the party of the first part has caused these presents to be executed as of the day and year first above written.

UNITED STATES OF AMERICA
Acting by and Through
War Assets Administration

By _____
DONN A. BIGGS
Associate Deputy Zone Administrator
Office of Real Property Disposal
Zone VI
San Francisco, California

-6-

VOL 1521 PAGE 10

STATE OF CALIFORNIA                    )
                                       ) ss.
CITY AND COUNTY OF SAN FRANCISCO )

On this 26 day of Sept. 1947, before me,
_____, a Notary Public in and for the City and County of San Francisco, State of California, personally appeared DONN A. BIGGS, known to me to be the Acting Deputy Zone Administrator, Office of Real Property Disposal, Zone VI, San Francisco, California, and known to me to be the person who executed the within instrument on behalf of the United States of America, and acknowledged to me that he subscribed to the said instrument the name of the United States of America, and the name of the War Assets Administration on behalf of the United States of America, and further that the United States of America executed said instrument.

WITNESS my hand and Official Seal.

(SEAL)

_____
Notary Public
in and for the City and County of
San Francisco, State of California

My Commission expires: Dec. 27 - 1950

-9-

# EXHIBIT 2

# Affidavit of Counsel In Support of Defendant County of San Mateo's Joinder of Necessary Party and FAA Letter

THOMAS F. CASEY III, COUNTY COUNSEL (SBN 47562)
By: Miruni Soosaipillai, Deputy (SBN 160858)
By: Deborah Penny Bennett, Deputy (SBN 072282)
Hall of Justice and Records
400 County Center, 6th Floor
Redwood City, CA 94063
Telephone: (650) 363-1960
Facsimile: (650) 363-4034
E-mail: msoosaipillai@co.sanmateo.ca.us

Attorneys for Defendants
COUNTY OF SAN MATEO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MONTARA WATER AND SANITARY DISTRICT,

Plaintiffs,

vs.

COUNTY OF SAN MATEO, et al.,

Defendants.

Case No. C 07-3176 JF

**AFFIDAVIT OF COUNSEL IN SUPPORT OF DEFENDANT COUNTY OF SAN MATEO'S MOTION FOR JOINDER OF NECESSARY PARTY**

Hearing:

Date:    July 27, 2007
Time:    9:00 a.m.
Dept:    Courtroom 3, 5th Floor

(Hon. Jeremy Fogel)

I, Deborah Penny Bennett make this declaration in support of Defendants' Motion for Joinder of the United States as a necessary party. If sworn, I could and would testify competently to the following:

1.    I am employed by the San Mateo County Counsel as a Deputy County Counsel. I am the attorney for the Department of Public Works, which includes the Half Moon Bay Airport.

2.    In that capacity, I attended the April 19, 2007 meeting of plaintiff's governing board, and at that meeting presented the County of San Mateo's opposition to the proposed adoption of Resolution of Necessity.

3.    The County's opposition included the attached document, which is a true and correct copy of an April 19, 2007 letter from Joseph R. Rodriguez, the Supervisor of Environmental Planning and

1  Compliance Section at the San Francisco Airports District Office of the US Department of

2  Transportation, Federal Aviation Administration, to Mark Larson, the Airport Manager for the County of

3  San Mateo.

4      I declare under penalty of perjury that the foregoing is true and correct and executed at Redwood

5  City, California this 22nd day of June, 2007.

6

7

8                                         _____

9                                         Deborah Penny Bennett

10

11  L:\LITIGATE\M_CASES\MWSD v. CSM\Pleadings\dpb affidavit.doc

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



U.S. Department
Of Transportation
**Federal Aviation
Administration**

**San Francisco Airports District Office
831 Mitten Road, Room 210
Burlingame, California  94010-1303**

April 19, 2007

Mr. Mark Larson
Airport Manager
620 Airport Drive
San Carlos, California 94070

Dear Mr. Larson,

Subject: Facsimile Transmittal Dated 4/12/2007, Montara Water & Sanitation District
Notice of Intent to Initiate Eminent Domain Proceedings, Half Moon Bay Airport
Request for FAA Opinion

Our office has reviewed the San Mateo County transmittal regarding the pending action
of the Montara Water and Sanitation District Notice of Intention to initiate eminent
domain proceedings to transfer airport property interest for a non-aeronautical purpose.
The Half Moon Bay Airport (HAF) is part of a national transportation system of public
airports. The Federal Aviation Administration (FAA) is the successor federal agency
responsible for the federal oversight of the lands conveyed under the War Assets
Administration (WAA) deed dated September 26,1947.  Under the terms of the transfer
document San Mateo County is obligated to maintain the property for the benefit and use
as a public airport. The FAA has included HAF in the National Plan of Integrated Airport
Systems (NPIAS) as a general aviation reliever airport.  The airport is a valuable
transportation link for interstate and intrastate air transportation.

Federal legislation has been established after the transfer of the federal interest in HAF to
provide funding for the continuation of the public use of the property for the airport
purposes specified in the 1947 deed.  The FAA has assigned the airport a site number,
(01638.A), to identify the airport and disclose the type of federal agreements that affect
the title to the airport property.  Enclosed for your information are select pages of FAA
Order 5190.2R, *List of Public Airports Affected by Agreements with the Federal
Government*.  The County, as a recipient of numerous federal grant agreements under the
Airport Improvement Program (AIP) must operate and maintain the airport in compliance
with FAA airport design and planning criteria.

The AIP grant agreements include a list of Airport Sponsor Assurances (Assurances) that
mandate specific performance.  The Grant Agreement Assurances are not severable.  The

1

County must maintain rights and powers to ensure that the public benefit derived from the use of the airport property complies with current FAA Orders and Advisory Circulars. The County cannot sell, or entered into long-term lease agreements that would encumber the title to the airport without FAA review and approval of the use of airport property. Assurance Number 29, Airport Layout Plan, requires the County to keep an accurate record of the boundary of the airport at all times. Any proposed change of the airport property boundary must be approved by the FAA to assure that the public benefit for airport purposes is not impacted.

The FAA is not in favor of a sale of the property for the well sites identified in the County's facsimile transmittal. The sale of the well sites would encumber the County's ability to provide for future aviation development should the demand for leasehold occur in the future. The property in question is suitable for aircraft storage, (open tie-down or hangar space), a fixed based operator (FBO) aviation business, or other aviation compatible non-aeronautical business development. Additional airport property would be lost due to the need to install perimeter fencing of the well sites and three separate access right-of-ways. The County must restrict access to the airfield to authorized users/tenants of HAF to remain in compliance with the grant agreement Assurances. The Montara Water & Sanitation District and its authorized employees cannot access airport property if they are no longer a tenant of the HAF.

The FAA policy and procedure for federal oversight of airport land use is contained in FAA Order 5190.6A, Airport *Compliance Requirements*. The FAA is not in agreement that the land is no longer needed for an airport purpose. The wells can be capped and relocated to another area. The surface area may be then returned for use for airport development as identified above. **Therefore, the land is not considered surplus property and the FAA San Francisco Airports District Office would not recommend a release of the federal agreement obligations to permit the sale of the property. The proposed taking does not recognize the reverter clause in the 1947 deed. The County must follow the notification requirements in the 1947 deed and the land release procedures specified in FAA Order 5190.6A. Failure to comply with the notification and approval requirement procedures would subject the County to FAA enforcement action that could include the suspension of grant payments and withholding of future grant funding for HAF.**

In closing the County must subordinate all airport lease agreements to the conditions, covenants, and reservations specified in the federal agreements to remain in good standing with the FAA. We are of the opinion that the federal interest in the land for air transportation purposes continues to be the primary need for the use of the property. The existing Revocable Encroachment Agreement (REA) is not in conflict with the airport purposes specified in the federal agreements. The FAA recommends that the County continue the use of the REA or consider relocation the well sites to another section of airport property that is remote from prime aviation development use. The FAA would have no objection to well site(s) located off airport property.

If you have any additional questions please contact me at (650) 876-2778, extension 610.

Sincerely,

*Original signed by*
*Joseph R. Rodriguez*

Joseph R. Rodriguez
Supervisor Environmental Planning and Compliance Section