1   THOMAS F. CASEY III, COUNTY COUNSEL (SBN 47562)
    By: Miruni Soosaipillai, Deputy (SBN 160858)
2   By: Deborah Penny Bennett, Deputy (SBN 072282)
    Hall of Justice and Records
3   400 County Center, 6th Floor
    Redwood City, CA  94063
4   Telephone: (650) 363-1960
    Facsimile: (650) 363-4034
5   E-mail:  msoosaipillai@co.sanmateo.ca.us

6   Attorneys for Defendants
    COUNTY OF SAN MATEO

7

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11  MONTARA WATER AND SANITARY DISTRICT,        Case No. C07-3176 JF

12              Plaintiffs,                       **DEFENDANT COUNTY OF SAN MATEO'S
                                                  ANSWER TO COMPLAINT**
13      vs.

14  COUNTY OF SAN MATEO, et al.,

15              Defendants.

16

17      **COMES NOW DEFENDANT COUNTY OF SAN MATEO**, and in answer to the Complaint

18  herein, admits, denies, and alleges as follows:

19      1.      Answering paragraph 1, defendant admits that plaintiff provides water and sanitary

20  services to the unincorporated areas in the County of San Mateo, including the communities of Montara

21  and Moss Beach.  Defendant lacks sufficient information and belief to either admit or deny the remaining

22  allegations, and on that basis, defendant denies each and every other remaining allegation.   Further, the

23  majority of the allegations in paragraph 1 are legal rather than factual, and defendant denies the

24  allegations on that ground as well.

25      2.      Answering paragraph 2, defendant admits the first sentence.  Defendant lacks sufficient

26  information and belief to either admit or deny the allegations in the second and third sentences, and on

27  that basis, defendant denies each and every other remaining allegation.   Defendant denies the final

28  sentence of paragraph 2.

3.    Answering the first of the two paragraphs numbered as paragraph 3, defendant admits that the plaintiff has a revocable encroachment permit to extract water from wells located on defendant's property at the Half Moon Bay Airport.  Defendant denies the remaining allegations in paragraph 3.

4.    Answering the second of the two paragraphs numbered as paragraph 3, defendant denies each and every allegation therein.

5.    Answering paragraphs 4, 5, and 6, defendant denies each and every allegation therein.

6.    Answering paragraph 7, defendant admits that the plaintiff's governing board adopted a Resolution of Necessity at its meeting on April 19, 2007, and that the Resolution adopted by the board is attached to the Complaint.

7.    Answering paragraphs 8, 9, 10, 11, 13 and 14, defendant lacks sufficient information and belief to either admit or deny the allegations, and on that basis, defendant denies each and every allegation therein.

8.    Answering paragraph 12, defendant admits that the County of San Mateo owns the Half Moon Bay Airport, and alleges that the United States of America has a reversionary interest in the property.

**ELEMENTS REQUIRED BY CALIFORNIA CODE OF CIVIL PROCEDURE § 1250.320**

1.    Defendant alleges that  it owns the property at the Half Moon Bay Airport on which plaintiff's wells are located, pursuant to and subject to a deed executed by the United States of America, which deed is attached hereto and incorporated by reference herein as Exhibit 1.  Defendant alleges that said deed created a reversionary interest in the United States of America as more particularly set forth in Exhibit 1.

2.    Defendant alleges that in the event of a taking, it will suffer loss of goodwill as set forth in California Code of Civil Procedure §1263.510, and on that basis, defendant claims compensation under § 1263.510.

//

//

//

//

**AFFIRMATIVE DEFENSES—**

**DEFENDANT OBJECTS TO PLAINITFF'S RIGHT TO TAKE THE PROPERTY**

**ON THE FOLLOWING GROUNDS:**

1.      As and for a first affirmative defense, defendant alleges that the plaintiff is not authorized by statute to exercise the power of eminent domain for the purpose stated in the complaint, or in some or all of the locations specified in the complaint.

2.      As and for a second affirmative defense, defendant alleges that the stated purpose is not a public use.

3.      As and for a third affirmative defense, defendant alleges that the plaintiff does not intend to devote the property for the designated public purpose.

4.      As and for a fourth affirmative defense, defendant alleges that there is no reasonable probability that the plaintiff will devote the described property to the stated purpose within seven years.

5.      As and for a fifth affirmative defense, defendant alleges that the described property is not subject to acquisition by the power of eminent domain for the stated purpose.

6.      As and for a sixth affirmative defense, defendant alleges that the taking of the described property sought to be acquired would result in a remainder under California Code of Civil Procedure §1240.150, and/or a remnant under California Code of Civil Procedure § 1240.410, which would result in a significant impairment of the current use of the property as an airport.  The acquisition does not satisfy the requirements of California Code of Civil Procedure § 1240.410 in that plaintiff has a reasonable, practicable, and economically sound means to prevent the property from becoming a remnant.

7.      As and for a seventh affirmative defense, defendant alleges that the Resolution of Necessity adopted by plaintiff's governing board on April 19, 2007 does not include the findings necessary to satisfy California Code of Civil Procedure §1240.410 and 1240.420.

8.      As and for an eighth affirmative defense, defendant alleges that the proposed use will unreasonably interfere with or impair the continuance of the public use as it then exists or may reasonably be expected to exist in the future, that the condemnation would not result in a compatible joint use, and that the taking therefore violates California Code of Civil procedure §§ 1240.510, 1240.520, and 1240.530.

9.      As and for a ninth affirmative defense, defendant alleges that the Resolution of Necessity adopted by plaintiff's governing board on April 19, 2007 does not include the findings necessary to satisfy California Code of Civil Procedure §1240.510.

10.      As and for a tenth affirmative defense, defendant alleges that the property sought to be acquired is already appropriated to the more necessary public use of general aviation airport.

11.      As an eleventh affirmative defense, defendant alleges that the proposed taking is inconsistent with the terms of the deed whereby the United States of America granted to the Defendant conditional title to the property.  The deed provides that the property shall be used for airport purposes and only for airport purposes; that any other use requires approval of the predecessor agency to the FAA; that there may be no uses of the property that are inconsistent with or a hazard to aviation; that the United States of America has unrestricted rights to use the airport; that transfer of any legal interest in the property requires the approval of the FAA; and that any breach of those terms will result in a reversion of the property to the federal government.

12.      As a twelfth affirmative defense, defendant alleges that the proposed taking is not necessary for the purposes described in the Complaint.

13.      As a thirteenth affirmative defense, defendant alleges that the existing Revocable Encroachment Permit provides for replacement or relocation of the wells as needed by the Plaintiff, thereby providing the Plaintiff with a continued and uninterrupted supply of water.  In addition, the Permit allows the Plaintiff to drill additional well sites with Defendant approval.

14.      As a fourteenth affirmative defense, defendant alleges that plaintiff, and its predecessors in interest, Citizen's Utility District and CalAm Water Company, have been extracting water from wells at the Half Moon Bay Airport since 1964 without interruption, thereby negating the claim that the taking is necessary to ensure a continued and uninterrupted supply of water.

15.      As a fifteenth affirmative defense, defendant alleges that the availability of reasonable alternative locations for the plaintiff's wells mitigate against the claim of necessity. Other locations both on and off airport property exist for the wells, which other locations would not impair the defendant's public use of the property.   Although the defendant has offered to assist the plaintiff in identifying other suitable locations, these offers have been rejected or ignored by the plaintiff.  The defendant has

1   suggested a long term lease to secure the plaintiff's uninterrupted access to water at other locations, but

2   this proposal has also been rejected or ignored.

3       16.     As a sixteenth affirmative defense, defendant alleges that it has already appropriated the

4   property to a more necessary public use, including but not limited to its use a vital part of the National

5   Transportation System including its role as part of the National Plan of Integrated Airport Systems

6   (NIPIAS) and as a designated General Aviation Reliever Airport for San Francisco International Airport.

7   The Airport also serves important law enforcement, emergency services, military support, business,

8   economic and tourism roles for the benefit of the residents of San Mateo County, and the proposed taking

9   would impair the Defendant's ability to provide for vital future aviation development needs as may be

10  required in support of these roles by severely limiting the size, access, parking, and developable space

11  available in the prime aviation use areas of the airport.

12      17.     As a seventeenth affirmative defense, the proposed taking could threaten airport security

13  and the safety of its users by limiting the ability of airport personnel to have exclusive control of access

14  to the airport land.

15      18.     As an eighteenth affirmative defense, defendant alleges that the proposed taking could

16  threaten the future financial viability of the airport by severely limiting the Defendant's ability to (a) use

17  its property for aviation purposes, and (b) to address future aviation development needs in the prime

18  aviation development areas of the airport as it sees fit for the benefit of the residents of the County of San

19  Mateo and the National Transportation System.

20      19.     As a nineteenth affirmative defense, defendant alleges that the proposed taking would

21  threaten the financial viability of the airport by resulting in the suspension of FAA grants for the design

22  and construction of airport safety and maintenance improvement projects currently underway, and

23  making the Defendant ineligible for future FAA safety and improvement grants that will benefit the

24  residents of the County of San Mateo.

25      20.     As a twentieth affirmative defense, defendant alleges that the airport operates on an

26  Enterprise Fund and as such receives no funding from the County General Fund.  Its operating budget is

27  funded through airport user fees including aircraft tiedown and hangar charges, land and building leases,

28  permit and concession fees.  The proposed taking would threaten the financial viability of the airport by

1  limiting the County of San Mateo's ability to use the property for revenue generating purposes that are

2  consistent with the operation of the airport.

3      21.    As a twenty-first affirmative defense, defendant alleges that the proposed taking would

4  present safety and security issues to the County of San Mateo's pre-existing use of the Airport.

5      22.    As a twenty-second affirmative defense, defendant alleges that the plaintiff's proposed

6  taking is "incompatible" with the existing public use.  Although some of the property proposed to be

7  taken is located on the perimeter of the airport, it is also located in the central business activity area of the

8  airport.  Severing portions of the airport in this area poses problems to airport traffic circulation and

9  future site development.  The Defendant is obligated to maintain control over airport property, as set

10 forth in the Revocable Encroachment Permit.  The current permit allows for a balance of Airport

11 operations *and* the Plaintiff's well sites.  However, this balance could not be maintained if the Plaintiff

12 were to take the land itself.  The taking also impairs the Defendant's ability to provide for vital aviation-

13 related development in the future.  The Plaintiff's proposed taking presents insurmountable problems to

14 the existing public use and ongoing airport operations and security.  The Defendant cannot be subject to

15 repeated piecemeal takings of portions of the airport property now and in the future in the event existing

16 wells fail and must be relocated.

17     23.    As a twenty-third affirmative defense, defendant alleges that plaintiff has failed and

18 refused to cooperate in a study to determine the rate of payment for extraction of water under the

19 Revocable Encroachment Permit, which study would be a viable means of maintaining the balance

20 between the Airport and the wells that has existed since 1964.  As a result, it is premature to determine

21 whether the proposed taking would be in the public interest and necessity, whether the property sought to

22 be acquired is necessary for the project, or whether  proposed project is planned or located in the manner

23 that will be most compatible with the greatest public good and the least injury.  As a further result,

24 plaintiff has waived its right to claim that the proposed taking would be in the public interest and

25 necessity, whether the property sought to be acquired is necessary for the project, or whether  proposed

26 project is planned or located in the manner that will be most compatible with the greatest public good and

27 the least injury.

28     24.    As a twenty-fourth affirmative defense, defendant alleges that the proposed taking is not

1  required by the public interest and necessity, the property sought to be acquired is not necessary for the

2  project, and the proposed project is not planned or located in the manner that will be most compatible

3  with the greatest public good and the least injury, as the Plaintiff has not addressed the water issues and

4  environmental issues that would result from the proposed taking.

5    25.    As a twenty-fifth affirmative defense, defendant alleges that the property that is the

6  subject of the proposed taking is exempt from the eminent domain process.

7    26.    As a twenty-sixth affirmative defense, defendant alleges that plaintiff's reason for the

8  proposed taking is based solely on economics and cost savings to plaintiff, which does not amount to a

9  necessity for taking.   Therefore, the proposed taking is unauthorized.

10    27.    As and for a twenty-seventh affirmative defense, defendant alleges that the described

11  property is sought to be acquired pursuant to Section 1240.610 (condemnation for more necessary public

12  use), but the defendant has the right under Section 1240.630, 1240.640, 1240. 650, and 1240.660 to

13  continue the more necessary public use to which the property is appropriated.

14    28.    As a twenty-eighth affirmative defense, defendant alleges that the public interest and

15  necessity do not require the proposed project.

16    29.    As a twenty-ninth affirmative defense, defendants allege that the proposed project is not

17  planned or located in the manner that will be most compatible with the greatest public good and the

18  least private injury.

19    30.    As a thirtieth affirmative defense, defendant alleges that the Resolution of Necessity

20  adopted by plaintiff on April 19, 2007 was erroneous, defective, and influenced or affected by abuse of

21  discretion and/or gross abuse of discretion by the governing body.

22    31.    As and for a thirty-first affirmative defense, defendant alleges that the property sought to

23  be condemned is exempt from taking under California Public Resources Code § 8030.

24    32.    As and for a thirty-second affirmative defense, defendant alleges that the proposed taking

25  is in violation of the authority of the FAA to regulate the Half Moon Bay Airport, and is preempted by

26  the federal statutes and regulations concerning the regulation of aviation.

27    33.    As a thirty-third affirmative defense, defendant alleges that the property sought to be

28  condemned has been appropriated to a prior public use, and is therefore protected from the eminent

1  domain process.

2      34.    As a thirty-fourth affirmative defense, defendant alleges that the Resolution of necessity

3  adopted by plaintiff on April 19, 2007 was erroneous and without a reasonable foundation.

4      35.    As a thirty-fifth affirmative defense, defendant alleges that the Resolution of necessity

5  adopted by plaintiff on April 19, 2007 was not supported by substantial evidence.

6      36.    As a thirty-sixth affirmative defense, defendant alleges that the appraisal statement

7  supporting the pre-condemnation offer was inadequate.

8      37.    As a thirty-seventh affirmative defense, defendant alleges that plaintiff has failed to join a

9  necessary and/or indispensable party, to wit, the United States of America and its regulatory agency, the

10  Federal Aviation Administration.

11      38.    As a thirty-eighth affirmative defense, defendant alleges that the taking would

12  significantly impair the current and future use, safety, and security of the Half Moon Bay Airport.

13      39.    As a thirty-ninth affirmative defense, defendant alleges that the Resolution of Necessity

14  adopted by plaintiff's governing board on April 19, 2007 includes erroneous determinations of public

15  use, necessity, and more necessary public use, and that said findings are without reasonable foundation in

16  fact.

17      40.    As a fortieth affirmative defense, defendant alleges that plaintiff has not complied with the

18  California Environmental Quality Act (CEQA), Public Resources Code §§ 21000 through 21178.1.

19      41.    As a forty-first affirmative defense, defendant alleges that the plaintiff's authority to

20  acquire property by eminent domain may only be exercised within its territorial limits, and that some or

21  all of the property sought by the plaintiff is outside that territory in violation of California Code of Civil

22  Procedure § 1240.050.

23      42.    As a forty-second affirmative defense, defendant alleges that plaintiff has failed to join a

24  necessary party, namely the State of California, which has an interest in the preservation of the airport

25  property as the State Department of Transportation has invested state tax dollars into supporting and

26  developing Half Moon Bay Airport as an Airport, and because the County of San Mateo's operation of

27  the Half Moon Bay Airport is authorized under an Airport Permit issued by the State Department of

28  Transportation.

43.    As a forty-third affirmative defense, defendant alleges that the taking is precluded by the in the interests of the State of California, which has an interest in the preservation of the airport property as the State Department of Transportation has invested state tax dollars into supporting and developing Half Moon Bay Airport as an Airport, and because the County of San Mateo's operation of the Half Moon Bay Airport is authorized under an Airport Permit issued by the State Department of Transportation.

WHEREFORE, DEFENDANT PRAYS FOR JUDGMENT AS FOLLOWS:

(1) That Plaintiff take nothing by its complaint;

(2) That this Court determine and award the just compensation to which defendant is entitled by virtue of the taking of the subject property, and severance damage to the remaining property/loss of goodwill/precondemnation damages;

(3) That defendant be granted allowable litigation expenses and costs of suit incurred;

(4) That defendant be granted such other and further relief as the Court shall find just and proper.

Dated:  June 22, 2007                              THOMAS F. CASEY III, COUNTY COUNSEL


By: _____/s/_____
              Miruni Soosaipillai, Deputy

Attorneys for Defendants
COUNTY OF SAN MATEO

DEFENDANT COUNTY OF SAN MATEO'S ANSWER TO COMPLAINT

**PROOF OF SERVICE**

I do hereby declare that I am a citizen of the United States employed in the County of San Mateo, over 18 years old and that my business address is 400 County Center, Redwood City, California. I am not a party to the within action.

On June 22, 2007, I served the following document(s):

**DEFENDANT COUNTY OF SAN MATEO'S ANSWER TO COMPLAINT**

on all other parties to this action by placing a true copy of said document(s) in a sealed envelope in the following manner:

[X] (BY U.S. MAIL)  by placing a true copy of said document(s) in a sealed envelope(s) addressed as shown below for collection and mailing at Redwood City, California following our ordinary business practices. I am readily familiar with this office's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

[ ] (BY FEDERAL EXPRESS)  by placing a true copy of said document(s) in a sealed envelope(s) addressed as shown below for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with this office's practice. I am readily familiar with this office's practice for processing correspondence for delivery the following day by Federal Express.

[ ] (BY FACSIMILE TRANSMISSION)  by telefaxing a true copy of said document(s) at ____, __ m. on the date stated above to the addressee(s) and number(s) shown below.  A transmission report was properly issued by the transmitting facsimile machine and is attached hereto.  The transmission was reported as completed and without error.

[ ] (BY PERSONAL SERVICE)  I caused such envelope(s) to be hand-delivered to the addressee(s) shown below.  A proof of service signed by the authorized courier will be filed forthwith.

[ ] (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[X] (FEDERAL) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

/s/
ANNABELLE GAISER

Montara Water and Sanitary District v. County of San Mateo, et al.,
United States District Court, Northern District of California, San Jose
Case No. C 07-3176 JF

**NAME AND ADDRESS OF EACH PERSON TO WHOM SERVICE WAS MADE**

Please see attached service list.

1

<u>**SERVICE LIST**</u>

| | |
|---|---|
| Christine C. Fitzgerald,<br>345 Lorton Avenue Suite #302<br>Burlingame, CA 94010 | ATTORNEY FOR PLAINTIFF:<br>*Montara Water and Sanitary District,* |

# EXHIBIT 1

# Quitclaim Deed

IN THE BOARD OF SUPERVISORS,
COUNTY OF SAN MATEO, STATE OF CALIFORNIA.

RESOLUTION NO. 3454

BE IT RESOLVED that the attached QUITCLAIM DEED dated September 2

from UNITED STATES OF AMERICA Acting by and Through War Assets Administ

to the COUNTY OF SAN MATEO, be and it is hereby accepted, and that

the Recorder of the County of San Mateo, be and he is hereby

requested and authorized to place said QUITCLAIM DEED of record.

Regularly passed and adopted by order of the Board of Super-

visors this 24th day of May ,19 48 .

Chairman, Board of Supervisors,
County of San Mateo, State of
California.

ATTEST: _____ Clerk.

BOARD OF SUPERVISO

F I L E D

MAY 24 1948

W. H. AUGUSTUS, Cl

BK. 44 PAGE 4

STATE OF CALIFORNIA,)
                     ) ss.
County of San Mateo.)

I, W. H. AUGUSTUS, County Clerk and ex-officio Clerk of the

Board of Supervisors of the County of San Mateo, State of California,

do hereby certify that the foregoing is the true and correct copy

of the original resolution as adopted by the Board of Supervisors

_____ , accepting deed from _____

_____

WITNESS my hand and seal this _____ day of _____ 19 ____.

County Clerk and ex-officio Clerk
of the Board of Supervisors.

(31)

VOL 1521 PAGE 2

Half Moon Bay Flight Strip
W-Calif-194

## QUITCLAIM DEED

THIS INDENTURE, made this 26 day of Sept ,1947,

between the UNITED STATES OF AMERICA, acting by and through the War Assets

Administration, under and pursuant to Executive Order 9689, dated January 31,

1946, and the powers and authority contained in the provisions of the Surplus

Property Act of 1944, as amended, and applicable rules, regulations and

orders, party of the first part, and COUNTY OF SAN MATEO, a body politic under

the laws of the State of California, acting by and through its Board of

County Supervisors, party of the second part;

WITNESSETH: That the said party of the first part, for and in

consideration of the assumption by the party of the second part of all the

obligations and its taking subject to certain reservations, restrictions and

conditions, and its covenant to abide by and agree to certain other

reservations, restrictions, and conditions, all as set out hereinafter, has

remised, released, and forever quitclaimed and by these presents does remise,

release and forever quitclaim to the said party of the second part, its

successors and assigns, under and subject to the reservations, restrictions

and conditions, exceptions, and reservation of property and rights herein-

after set out, all its right, title, and interest in the following described

property situated in the County of San Mateo, State of California, to wit:

> BEGINNING at a point in the southeasterly line of
> Marine View Terrace Tract, which bears N. 29° 19' E.,
> 1110.54 ft. and N. 43° 00' W., 1579.39 ft. from the most
> easterly corner of Lot 1 in Block 28 of the Riviera Ocean
> Villa Tract, as per map thereof filed for record in Book
> 6 of Maps at page 20, Records of San Mateo County, thence
> N. 28° 42' 45" E. 1700 ft. more or less to the southwesterly
> line of the County Road (now a State Highway) from Half Moon
> Bay to Marine View; thence in a general southeasterly
> direction, following the meander of the southwesterly line
> of said road, 4287 feet, more or less, to a one inch iron
> pipe, which is at the most northerly corner of a Portion
> of Francisco Heights, as designated on the map entitled
> "Map of Francisco Heights Near Half Moon Bay, San Mateo
> County, California", which map was filed in the office of
> the Recorder of the County of San Mateo, State of California,
> on March 3, 1908 in Book 6 of Maps at pages 5 and 6, thence
> continuing along the southwesterly line of the Highway,
> 1125 feet, more or less, to a point on the southeasterly
> line of Francisco Heights Subdivision, thence N. 25° 57' E.
> 30 ft., to the intersection of the center line of the

QUITCL
DEED

County Road (now a State Highway) from which intersection a witness post marked AXVI bears North 26° East, 0.34 chains; thence southeasterly along the center line of said Highway to a point, from which bears North 71° 00' West, 1000 feet, more or less, which is the most northerly corner of the lands of Danieri, thence South 71° East, 65 feet more or less to a point in the center of the Denniston Creek; from which a witness post marked AV bears North 71° W., distant 19.80 ft., thence up said creek in the center of the same and following the meanderings thereof as follows: South 18° East, 104.23 feet; thence South 14° 45' East, 132 feet; thence South 18° West, 89.10 feet; thence South 8° 30' West, 165.0 feet; thence South 31° 30' West 72.60 feet; thence South 66 feet; thence South 13° East, 85.44 feet; thence South 23° East, 75.90 feet; thence leaving center line of said creek South 85° 30' East, 2640 feet, from which a witness post marked AXIII bears North 27° 30' East, distant 24.42 feet; thence South 50° East, 51.48 feet, from which a witness post marked AXII bears North 27° 30' East, distant 24.42 feet; thence South 11° 30' East, 419.76 feet; thence North 27° 30' East, 24.92 feet to a fence corner post marked AXI; thence South 25° 30' East 87.02 feet, to a post marked AX, standing in line of fence on the westerly side of the tract of land belonging to Patrick McMahon; thence North 71° West 1598.23 feet, from which a post marked AVII bears North 71° West 100.61—feet, thence North 47° East, 64.93 feet; thence North 43° 00' West, 5889.74' to a point from which the most easterly corner of Lot 1 in Block 26 of the Riviera Ocean Villa Tract, as per map thereof filed for record in Book 6 of Maps, at page 20, Records of San Mateo County; thence North 43° 00' West, 1193.27 feet; thence South 47° 00' West, 625.0 feet; thence North 43° 00' West, 186.85 feet to the point of beginning.

Containing 217.68 acres of land.

TOGETHER WITH improvements described as follows:

Buildings:  T-1, T-2, T-3, T-4, T-5, T-6, T-14, T-15, T-16, T-17, T-18, T-19, T-7, T-9, T-101, and T-102.

Improvements:  Taxiways, field drainage, and field markings.
Fueling system - 3 underground tanks
Existing surplus utility systems

RESERVING HOWEVER, a perpetual easement for a water pipeline, more particularly described as follows:

BEGINNING at a point on the northwesterly boundary of that land conveyed by Riviera Land Company to the United States of America by Deed dated 14 April 1943, recorded 15 April 1943 in Volume 1056, Page 307 in the Official Records of San Mateo County, State of California, said point bearing S 28° 42' 45" W along said northwesterly boundary line a distance of 469.35 feet from the most northerly point of said land, said point being also the most southerly point on the center line of a revocable permit granted by the

Board of Supervisors, County of San Mateo, State of California to the United States of America, said revocable permit being in the files of the County Clerk of San Mateo, State of California, and running thence N 28° 42' 45" E along the aforementioned northwesterly boundary line, 5.46 feet; thence S 37° 35' 45" E, 186.34 feet; thence S 38° 25' 30" E, 119.26 feet; thence S 57° 45' 10" E, 138.86 feet; thence S 59° 24' 05" E, 130.11 feet; thence S 55° 51' 20" E, 134.42 feet; thence S 45° 37' 40" E, 107.80 feet; thence S 37° 56' 40" E, 103.86 feet; thence S 35° 14' 55" E, 641.23 feet; thence S 36° 29' 45" E, 102.49 feet; thence S 56° 57' 30" E, 124.00 feet; thence S 49° 13' 10" E, 583.95 feet; thence S 48° 31' 25" E, 188.44 feet; thence S 61° 27' 35" E, 724.94 feet; thence S 58° 11' 25" E, 526.02 feet; thence S 57° 03' 25" E, 162.07 feet; thence S 45° 23' 45" E, 136.85 feet; thence S 47° 56' 25" E, 129.04 feet; thence S 52° 24' 05" E, 95.09 feet; thence S 55° 09' 25" E, 642.87 feet; thence N 30° 12' 35" E, 127.56 feet; thence N 56° 05' 25" W, 60.81 feet; thence N 33° 54' 35" E, 12.00 feet to a point on the boundary line of that property conveyed by Pietro, Petrocchi et al., to the United States of America by Deed dated 12 March 1943, recorded 18 March 1943 in Volume 1050, Page 474 in the Official Records of San Mateo County, State of California; thence S 56° 05' 25" E, 70.06 feet; thence S 30° 12' 35" W, 139.76 feet; thence S 55° 09' 25" E, 697.02 feet; thence N 34° 50' 35" E, 5.00 feet; thence S 55° 09' 25" E, 21.00 feet; thence S 34° 50' 35" W, 26.00 feet; thence N 55° 09' 25" W, 21.00 feet; thence N 34° 50' 35" E 4.98 feet; thence N 56° 40' 25" W, 704.59 feet; thence N 30° 12' 35" E, 24.75 feet; thence N 55° 09' 25" W, 643.93 feet; thence N 52° 24' 05" W, 95.71 feet; thence N 47° 56' 25" W, 129.64 feet; thence N 45° 23' 45" W, 136.95 feet; thence N 57° 03' 25" W, 160.95 feet; thence N 58° 11' 25" W, 525.64 feet; thence N 61° 27' 35" W, 725.80 feet; thence N 48° 31' 25" W, 189.52 feet; thence N 49° 13' 10" W, 583.21 feet; thence N 56° 57' 30" W, 125.12 feet; thence N 38° 29' 45" W, 104.39 feet; thence N 35° 14' 55" W, 641.09 feet; thence N 37° 56' 40" W, 102.94 feet; thence N 45° 37' 40" W, 106.22 feet; thence N 55° 51' 20" W, 133.22 feet; thence N 59° 24' 05" W, 129.95 feet; thence N 57° 45' 10" W, 140.70 feet; thence N 38° 25' 30" W, 121.04 feet; thence N 37° 35' 45" W, 182.04 feet to a point on the boundary line of the aforementioned land conveyed by Riviera Land Company to the United States of America; thence N 28° 42' 45" E along the said boundary line, 5.46 feet to the point of beginning, containing 1.62 acres, more or less.

BEING the property acquired by the United States of America by condemnation proceedings titled United States of America vs. 33.22 acres of land, San Mateo County, and Giovanni Patroni, et al., Southern Division of the United States District Court for the Northern District of California.

The above described premises are transferred subject to existing easements for roads, highways, public utilities, railways and pipelines, and all other easements and encumbrances of record.

-3-

1          EXCEPTING, HOWEVER, from this conveyance all right, title and

2  interest in and to all property in the nature of equipment, furnishings

3  and other personal property which can be removed from the land without

4  material injury to the land or structures located thereon other than prope:

5  of such nature located on the premises conveyed hereby which is required

6  for the efficient operation for airport purposes of the structures and im-

7  provements specifically listed hereinabove as being transferred hereby; an:

8  further excepting from this conveyance all structures on the above describe

9  premises other than structures specifically described or enumerated above

10  as being conveyed hereunder, and reserving to the party of the first part

11  the right of removal from the premises of the property and structures excep

12  ed hereby, within a reasonable period of time after the date hereof, which

13  shall not be construed to mean any period less than one (1) year after the

14  date of this instrument.

15          Said property transferred hereby was duly declared surplus and

16  was assigned to the War Assets Administration for disposal, acting pursuant

17  to the provisions of the above mentioned Act, as amended, Executive Order

18  9689, and applicable rules, regulations and orders.

19          By the acceptance of this deed or any rights hereunder, the said

20  party of the second part, for itself, its successors and assigns, agrees

21  that transfer of the property transferred by this instrument is accepted

22  subject to the following restrictions set forth in subparagraphs (1) and (2)

23  of this paragraph, which shall run with the land, imposed pursuant to the

24  authority of Article 4, Section 3, Clause 2 of the Constitution of the United

25  States of America, the Surplus Property Act of 1944, as amended, Executive

26  Order 9689, and applicable rules, regulations and orders:

27         (1)  That all of the property transferred hereby, together with the

28  adjacent flight strip under the jurisdiction of the Public Roads Administratio

29  hereafter in this instrument called the "airport", shall be used for public

30  airport purposes, and only for such purposes, on reasonable terms and without

31  unjust discrimination and without grant or exercise of any exclusive right for

32  use of the airport within the meaning of Section 303 of the Civil Aeronautics

VOL 1521 PAGE 6

1  Act of 1938. As used herein, "public airport purposes" shall be deemed to

2  exclude use of the structures conveyed hereby, or any portion thereof, for

3  manufacturing or industrial purposes. However, until in the opinion of

4  Civil Aeronautics Administration or its successor Government agency, it is

5  needed for public airport purposes, any particular structure transferred

6  hereby may be utilized for non-manufacturing or non-industrial purposes in

7  such manner as the party of the second part deems advisable, provided that

8  such use does not interfere with operation of the remainder of the airport

9  as a public airport.

10      (2) That the entire landing area, as defined in WAA Regulation

11  16, dated June 26, 1946, and all structures, improvements, facilities and

12  equipment of the airport shall be maintained at all times in good and service-

13  able condition to assure its efficient operation, provided, however, that

14  such maintenance shall be required as to structures, improvements, facilities

15  and equipment only during the remainder of their estimated life, as determined

16  by the Civil Aeronautics Administration or its successor Government agency,

17  with the exception, however, that the Grantee shall maintain only that part of

18  the existing hardstand shaded in green on the attached photostat copy of the

19  plat of Half Moon Bay Army Airbase Flight Strip prepared by the United States

20  Engineering Office, San Francisco, California, and dated February 1, 1944.

21  In the event materials are required to rehabilitate or repair certain of the

22  aforementioned structures, improvements, facilities or equipment, they may be

23  procured by demolition of other structures, improvements, facilities or equip-

24  ment transferred hereby and located on the above described premises, which have

25  outlived their use as airport property in the opinion of the Civil Aeronautics

26  Administration or its successor Government agency.

27      By the acceptance of this deed or any rights hereunder, the said

28  party of the second part for itself, its successors and assigns, also assumes

29  the obligations of, covenants to abide by and agrees to, and this transfer is

30  made subject to, the following reservations and restrictions set forth in

31  subparagraphs (1) to (6) of this paragraph, which shall run with the land,

32  imposed pursuant to the authority of Article 4, Section 3, Clause 2 of the

-5-

Constitution of the United States of America, the Surplus Property Act of 1944, as amended, Executive Order 9689 and applicable rules, regulations and orders:

(1) That insofar as is within its power and reasonably possible, the party of the second part, and all subsequent transferees shall prevent any use of land either within or outside the boundaries of the airport, including the construction, erection, alteration, or growth of any structure or other object thereon, which use would be a hazard to the landing, taking-off, or maneuvering of aircraft at the airport, or otherwise limit its useful-ness as an airport.

(2) That the building areas and non-aviation facilities, as such terms are defined in WAA Regulation 16, dated June 26, 1946, of or on the airport shall be used, altered, modified, or improved only in a manner which does not interfere with the efficient operation of the landing area and of the airport facilities, as defined in WAA Regulation 16, dated June 26, 1946.

(3) That itinerant aircraft owned by the United States of America (hereinafter sometimes referred to as the "Government") or operated by any of its employees or agents on Government business shall at all times have the right to use the airport in common with others; provided, however, that such use may be limited as may be determined at any time by the Civil Aeronautics Administration or the successor Government agency to be necessary to prevent interference with use by other authorized aircraft, so long as such limitation does not restrict Government use to less than twenty-five (25) per centum of capacity of the landing area of the airport. Government use of the airport by virtue of the provisions of this subparagraph shall be without charge of any nature other than payment for damage caused by such itinerant aircraft.

(4) That during the existence of any emergency declared by the President of the United States of America or the Congress thereof, the Government shall have the right without charge, except as indicated below, to the full, unrestricted possession, control and use of the landing area, building areas, and airport facilities, as such terms are defined in WAA

VOL. 1521 PAGE 8

Regulation 16, dated June 26, 1946, or any part thereof, including any additions or improvements thereto made subsequent to the declaration of any part of the airport as surplus; provided, however, that the Government shall be responsible during the period of such use for the entire cost of maintaining all such areas, facilities and improvements, or the portions used, and shall pay a fair rental for the use of any installations or structures which have been added thereto without Federal aid.

(5)  That no exclusive right for the use of any landing area or air navigation facilities, as such terms are defined in WAA Regulation 16, dated June 26, 1946, included in or on the airport shall be granted or exercised.

(6)  That the property transferred hereby may be successively transferred only with the approval of the Civil Aeronautics Administration or the successor Government agency and with the proviso that any such subsequent transferee assumes all the obligations imposed upon the party of the second part by the provisions of this instrument.

By acceptance of this instrument or any rights hereunder, the party of the second part further agrees with the party of the first part as follows:

(1)  That upon a breach of any of the aforesaid reservations or restrictions by the party of the second part or any subsequent transferee, whether caused by the legal inability of said party of the second part or subsequent transferee to perform any of the obligations herein set out, or otherwise, the title, right of possession and all other rights transferred to the party of the second part, or any portion thereof, shall at the option of the party of the first part revert to the party of the first part upon demand made in writing by the War Assets Administration or its successor Government agency at least sixty (60) days prior to the date fixed for the revesting of such title, right of possession, and other rights transferred, or any portion thereof; provided, that, as to installations or structures which have been added to the premises without Federal aid, the Government shall have the option to acquire title to or use of the same at the then fair market value of the rights therein to be acquired by the Government.

-7-

(2)  That if the construction as covenants of any of the fore-
going reservations and restrictions recited herein as covenants or the
application of the same as covenants in any particular instance is held
invalid, the particular reservations or restrictions in question shall be
construed instead merely as conditions upon the breach of which the
Government may exercise its option to cause the title, right of possession and
all other rights transferred to the party of the second part, or any portion
thereof, to revert to it, and the application of such reservations or
restrictions as covenants in any other instance and the construction of the
remainder of such reservations and restrictions as covenants shall not be
affected thereby.

TO HAVE AND TO HOLD the said premises, with appurtenances, except
the property and rights excepted and reserved above, and under and subject to
the aforesaid reservations, restrictions, and conditions, unto the said party
of the second part, its successors and assigns forever.

IN WITNESS WHEREOF, the party of the first part has caused these
presents to be executed as of the day and year first above written.

```
                    UNITED STATES OF AMERICA
                    Acting by and Through
                    War Assets Administration


               By
                    DONN A. BIGGS
                    Associate Deputy Zone Administrator
                    Office of Real Property Disposal
                    Zone VI
                    San Francisco, California
```

-8-

VOL 1521 PAGE 10

1  STATE OF CALIFORNIA                )
                                       ) ss.
2  CITY AND COUNTY OF SAN FRANCISCO )

3

4          On this 36 day of Sept. 1947, before me,

5  _____, a Notary Public in and for the City and
   County of San Francisco, State of California, personally appeared DONN A. BIGGS,
6  known to me to be the Acting Deputy Zone Administrator, Office of Real Property
   Disposal, Zone VI, San Francisco, California, and known to me to be the person
7  who executed the within instrument on behalf of the United States of America,
   and acknowledged to me that he subscribed to the said instrument the name of
8  the United States of America, and the name of the War Assets Administration on
   behalf of the United States of America, and further that the United States of
9  America executed said instrument.

10         WITNESS my hand and Official Seal.

11 (SEAL)

12                                    _____
                                         Notary Public
13                                 in and for the City and County of
                                   San Francisco, State of California

14

15

16 My Commission expires: Dec. 24 - 1950

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

                              -9-